IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| FURMINATOR, INC. )<br>)<br>Plaintiff, )<br>v. )<br>)<br>PETVAC GROUP LLC )<br>)<br>Defendant. )<br>) | CASE NO. 2:08-CV-338<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

This is FURminator, Inc.'s ("FURminator") complaint against Defendant PetVac Group LLC ("PetVac").

## JURISDICTION AND VENUE

1. This is an action for patent infringement in which FURminator seeks preliminary and permanent injunctive relief as well as damages.

2. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 (federal question), and 1338 (patents, copyrights, trademarks and unfair competition related thereto).

## JURY TRIAL DEMANDED

3. FURminator hereby demands a jury on all triable issues.

## THE PARTIES

4. FURminator is a Missouri corporation with its principal place of business in St. Louis, Missouri.

5. On information and belief, PetVac is a Washington corporation with its principal place of business at 126 SW 148th Street, Suite C-100 #10, Seattle, Washington 98166.

6. PetVac's infringing product is being offered for sale in the Eastern District of Texas via at least the interactive websites, www.mypetvac.com and www.petvac2.com.

7. PetVac's infringing product is being sold in the Eastern District of Texas.

## Statement of Facts

8. FURminator is a St. Louis-based company formed by Angela and David Porter ("Porters") in 2002. FURminator's primary business is the promotion and sale of pet grooming tools and other pet products.

9. After starting in the pet grooming business, Angela Porter learned a grooming technique known as "carding," which removes the pet's shed hair without damaging the top coat. She was taught to card dogs by using the blade from a set of electric clippers. These blades come in a variety of sizes, but one common size is referred to as a "40 Blade." A groomer would hold the 40 Blade in his or her hand and move the 40 Blade repeatedly through the pet's fur. This method was difficult and tiring as these blades were not designed to be held or used in this fashion. Angela Porter's early experiences with this process and using other available pet grooming tools demonstrated a need for an easy-to-use tool that could remove shedding hair from pets, but did not pull or cut non-loose hair.

10. The Porters invented the FURminator DeShedding™ Tools, and, taking great personal financial risk, pursued a dream to start a business and sell those products. It took several years for the Porters to develop and to get their products to market. Angela Porter, owner of a pet grooming salon, and David Porter, a graphic design artist, worked together during that time to develop the concept, build prototypes, and find others that would help them manufacture their products.

- 3 -

11. On May 30, 2000, the Porters filed an application that eventually issued as U.S. Patent No. 6,782,846 (the '846 Patent) on August 31, 2004.

12. After the issuance of the '846 Patent, FURminator filed several continuation applications from the '846 Patent application, including but not limited to the patent in this suit, U.S. Patent No. 7,334,540 (the '540 Patent), a copy of which is attached as Exhibit 1.  During prosecution of these continuation applications, FURminator submitted to the United States Patent and Trademark Office ("PTO") materials alleged by accused infringers to be prior art.  The PTO allowed these continuations and granted patents from them, including the '540 Patent, over the alleged prior art.

13. FURminator is the owner by assignment of the '540 Patent.  The '540 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

14. FURminator produces several products that are covered by the '540 Patent, including, but not limited to, the FURminator DeShedding™ Tools, an example of which is depicted below:



15.     FURminator markets its FURminator DeShedding™ Tools to pet grooming professionals, including pet groomers, veterinarians and animal rescue centers.  FURminator also markets these products to the general public through QVC (a televised shopping service), catalogs, the Internet, mass retail outlets (such as PetSmart and Petco), professional pet groomers (who resell the FURminator line), printed advertisements, trade shows, and television advertisements.

16.     FURminator DeShedding™ Tools have been and continue to enjoy significant commercial success as well as widespread approval in the pet industry.  FURminator DeShedding™ Tools have received numerous accolades, including "Editor's Choice" by Dog Fancy, Cat Fancy, and Pet Product News in 2005 and was described as one of the best grooming products tested by the Tufts University School of Veterinary Medicine.  Since FURminator began widespread sales of its FURminator DeShedding™ Tools in 2003, the FURminator DeShedding™ Tools have enjoyed brisk sales.  As a result of these sales, FURminator has been recognized as one of the fastest growing companies in its home city of St. Louis, Missouri and

featured on television programs showcasing innovation such as the "Big Idea with Donnie Deutsch."  Sales of FURminator DeShedding™ Tools account for the majority of FURminator's revenues.

17.  On information and belief, FURminator's success has caused FURminator's competitor PetVac to imitate FURminator's products.

### PetVac's Infringing Activities

18.  PetVac, makes, uses, offers to sell, sells or imports into the United States the ShedEliminator grooming tool, an example of which is depicted below:



### Count I
### PetVac's Infringement of the '540 Patent under 35 U.S.C. § 271(a)

19.  FURminator incorporates by reference, as if fully set forth herein, the preceding paragraphs of this Complaint.

20.  PetVac has been and is infringing the '540 Patent under 35 U.S.C. § 271(a).

21.  PetVac directly infringes the '540 Patent by making, using, selling and/or offering to sell the infringing the ShedEliminator within the United States and/or importing into the United States the ShedEliminator.

22.  PetVac's conduct has damaged and will continue to damage FURminator.

23.  On information and belief, PetVac's infringement of the '540 Patent is and has been willful, making this case exceptional under 35 U.S.C. § 285.

### Count II

**PetVac's Infringement of the '540 Patent under 35 U.S.C. § 271(b)**

24. FURminator incorporates by reference, as if fully set forth herein, the preceding paragraphs of this Complaint.

25. PetVac has been and is infringing the '540 Patent under 35 U.S.C. § 271(b).

26. Others directly infringe the '540 Patent by using, selling, and/or offering to sell the infringing ShedEliminattor within the United States, and/or importing the infringing ShedEliminator into the United States.

27. Others directly infringe the '540 Patent through the practice of the method claimed in the '540 Patent using the ShedEliminator.

28. On information and belief, PetVac knows of the '540 Patent.

29. On information and belief, PetVac knows that others infringe the '540 Patent by using, selling, and/or offering for sale the infringing ShedEliminator within the United States and intends to so induce others to infringe the '540 Patent.

30. PetVac's conduct has damaged and will continue to damage FURminator.

31. On information and belief, PetVac's infringement of the '540 Patent is and has been willful, making this case exceptional under 35 U.S.C. § 285.

**Count III**
**PetVac's Infringement of the '540 Patent under 35 U.S.C. § 271(c)**

32. FURminator incorporates by reference, as if fully set forth herein, the preceding paragraphs of this Complaint.

33. PetVac has been and is infringing the '540 Patent under 35 U.S.C. § 271(c).

34. PetVac directly infringes the '540 Patent by making or using the method claimed in the '540 Patent.

35. PetVac makes, offers to sell, sells and/or imports into the United States the ShedEliminator grooming tool.

36. PetVac's ShedEliminator grooming tool is an apparatus for use in practicing FURminator's patented method as claimed in the '540 Patent.

37. PetVac's ShedEliminator grooming tool constitutes a material part of FURminator's method as claimed in the '540 Patent.

38. On information and belief, PetVac knows its ShedEliminator grooming tool to be especially made or especially adapted for use in infringement of the '540 Patent.

39. PetVac's ShedEliminator grooming tool is not a staple article or commodity of commerce suitable for substantial non-infringing use.

40. On information and belief, PetVac knowingly aided and abetted direct infringement of the '540 Patent by making, using, offering to sell, selling or importing PetVac's ShedEliminator grooming tool.

41. PetVac's conduct has damaged and will continue to damage FURminator.

42. On information and belief, PetVac's infringement of the '540 Patent is and has been willful, making this case exceptional under 35 U.S.C. § 285.

**PRAYER FOR RELIEF**

WHEREFORE, FURminator prays for judgment against Defendant as follows:

A. Preliminarily and permanently enjoin Defendant and any person acting in concert with it from further infringement of U.S. Patent No. 7,334,540;

B. Declare that the claims of U.S. Patent No. 7,334,540 are valid, enforceable, and infringed by Defendant;

    C.    Award FURminator damages resulting from the Defendant's infringement of U.S. Patent No. 7,334,540;

    D.    Treble the damages in accordance with the provisions of 35 U.S.C. § 284;

    E.    Find the case to be exceptional under the provisions of 35 U.S.C. § 285;

    F.    Award FURminator reasonable attorney fees under 35 U.S.C. § 285;

    G.    Order the impounding and destruction of all of Defendant's products that infringe U.S. Patent No. 7,334,540;

    H.    Award FURminator interests and costs;

    I.    Order Defendant to pay FURminator punitive damages due to its willful infringement;

    J.    Order an accounting of Defendant's profits resulting from sales of its products that infringe U.S. Patent No. 7,334,540;

    K.    Defendant must report to this Court of its compliance with the foregoing within thirty (30) days of judgment; and

    L.    For such other and further relief that the Court deems just and proper.

Respectfully submitted,

**Patton, Tidwell & Schroeder, LLP**

By: /s/ Nicholas H. Patton
Nicholas H. Patton
J. Kurt Truelove
4605 Texas Boulevard
Texarkana, Texas 75503
phone: (903) 792-7080
fax: (903) 792-8233

- 9 -

and

**Thompson Coburn LLP**
Of Counsel

Alan H. Norman
Steven E. Garlock
David B. Jinkins
Matthew A. Braunel
One US Bank Plaza
St. Louis, MO  63101
(314) 552-6000
(314) 552-7000 (fax)

*Attorneys for the Plaintiff*
*FURminator, Inc.*