**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| FURMINATOR, INC. | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 2-08-cv-338-TJW |
| PETVAC GROUP LLC. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are FURminator's Second Motion to Strike (Dkt. No. 48) and

FURminator's Renewed Motion to Strike and for Sanctions (Dkt. No. 68).  The Court GRANTS

these motions and issues sanctions as outlined by this Memorandum Opinion and Order.

**I.      Factual and Procedural Background**

On September 8, 2008, Plaintiff FURminator, Inc. ("FURminator") brought this patent

lawsuit claiming that Defendant PetVac Group, LLC. ("PetVac") directly infringed its patent.

On September 29, 2008, Mr. Evan Matsumoto, the apparent CEO of PetVac, moved the Court

for a 120 day extension to answer or otherwise respond to the Complaint.  (Dkt. No. 6.)  Mr.

Matsumoto does not appear to be a licensed attorney.  Because corporations and partnerships (as

fictional legal persons) *must* be represented by a licensed attorney, the Court denied the motion

for an extension of time and ordered PetVac to answer the complaint or otherwise respond to

plaintiff's complaint within thirty (30) days of the Order (Dkt. No. 8). *Southwest Express Co.,*

*Inc. v. Interstate Commerce Comm.*, 670 F.2d 53, 55 (5th Cir. 1982).  On November 24, 2008,

Mr. Matsumoto moved the Court "for an extension in order to complete a Re-Examination of the

Plaintiff's patent by the USPTO."  (Dkt. No. 9.)  At the time the motion was filed, PetVac had

over 85 days in which to answer FURminator's Complaint.  In addition, Plaintiff represents to

the Court that when the motion was filed there was no re-examination of FURminator's patent

pending before the USPTO.

As a result of the above activities, on January 27, 2009, FURminator requested that the Court enter default judgment against PetVac and also set a hearing to determine the appropriate amount of damages to be awarded to FURminator and whether a permanent injunction should issue enjoining PetVac from further infringement of FURminator's patent.  (Dkt. No. 12.) However, on February 6, 2009, Mr. Kent A. Rowald filed an answer to the complaint on behalf of PetVac. (Dkt. No. 13.)  And on February 17, 2009, PetVac filed a response to FURminator's motion for entry of default judgment. (Dkt. No. 14.)  FURminator then filed, on March 2, 2009, its first motion to strike the Answer and Counterclaims filed by PetVac arguing that PetVac failed to seek leave of Court to file its untimely answer and counterclaims. (Dkt. No. 18.)  On March 9, 2009, the Court entered an Order denying FURminator's motion for entry of default judgment stating that PetVac was now represented by counsel and had answered the original complaint. (Dkt. No. 23.)  On May 7, 2009, the Court entered an Order denying FURminator's motion to strike the Answer and Counterclaims.  (Dkt. No. 24.)

On December 14, 2009, a status conference was held, and PetVac's counsel failed to appear at the status conference.  On January 19, 2010, the Court entered a Docket Control Order and Discovery Order.  On March 2, 2010, the Court entered a stipulated Protective Order.

Then on April 15, 2010, FURminator filed a motion to strike pleadings arguing that PetVac had consistently refused to abide by this Court's Discovery Order, Docket Control Order, and the Local Patent Rules for the Eastern District of Texas.  (Dkt. No. 43.)  Specifically, FURminator argued that PetVac: (1) failed to timely answer FURminator's complaint; (2) failed to appear at this Court's status conference; (3) failed to notify the Court and FURminator whether it consents to trial before the Magistrate Judge; (4) failed to timely serve invalidity

contentions; (5) failed to submit proposed terms and claim elements for construction; and (6) failed to produce a single document to FURminator.  As a result, on May 25, 2010, the Court held a hearing regarding FURminator's motion to strike.  At the hearing the Court gave instructions to Mr. Rowald, struck PetVac's invalidity contentions as sanctions, and ordered PetVac to comply with the discovery order within 21 days, which included PetVac providing written responses if documents were not available.

FURminator filed another motion to strike pleadings on June 18, 2011.  FURminator argued that as of that day (24 days from the date of the Court's oral Order), PetVac had neither produced documents in response to the Court's Order nor provided written responses.  (Dkt. No. 48.)  FURminator argued that PetVac has already been sanctioned for its improper conduct and that PetVac's actions indicated that no lesser sanction will suffice because it had been given ample opportunity to cure its failure to comply.  FURminator noted that PetVac continued to refuse to participate in discovery in compliance with the Court's Orders (*see* Dkt. Nos. 31 & 46) and that PetVac's non-compliance was willful.

On June 21, 2010, the Court entered an order requiring PetVac to respond to FURminator's Second Motion to Strike Pleadings of PetVac, including the allegations of non-compliance, by Thursday, June 24, 2010. (Dkt. No. 49.)  On June 24, 2010, PetVac responded to FURminator's motion and the Court Order.  (Dkt. No. 50.)  The response claimed that PetVac contacted FURminator concerning its production on June 15 and attached an email to this effect, purportedly sent to Thompson Coburn Attorney Jonathan G. Musch. (Dkt. No. 50 at 1 and 4.)  In its response, FURminator represented to the Court that the email submitted by PetVac as Exhibit A was not received by Mr. Musch's Thompson Coburn electronic mail account.  (*See* Dkt. No. 51-1.)  FURminator performed an audit of Mr. Musch's electronic mail account over the twelve-

hour period in which the email was purportedly sent. *Id.*  The audit reflected no email from Kent Rowald (krowald@patentlawyers.com) on June 15, 2010 at any time between noon and midnight, much less at 5:35 PM.  *Id.*  FURminator also verified that the email was not redirected by a spam filter.  Additionally, FURminator argued that a review of the document attached as Exhibit A to PetVac's response (*i.e.*, the alleged email) displayed facial irregularities that might indicate it was fraudulent.

On July 16, 2010, the Court set a hearing regarding FURminator's allegation that the email was never received and has facial irregularities that suggest it is fabricated.  The Court invited the parties to present evidence demonstrating the authenticity or forgery of the email. The Court also ordered PetVac to preserve all evidence related to this email account.  On July 27, 2010, the Court conducted the hearing on FURminator's Second Motion to Strike Pleadings of PetVac.  At the hearing, PetVac represented to the Court that it would submit to FURminator the documents identified in the letter dated June 22, 2010. (*See* Dkt. No. 50 at 5.) The Court Ordered PetVac to file a notice with the Court that such production has been completed no later than Wednesday, July 28, 2010.  (Dkt. No. 54.)  The Court also instructed the parties that should FURminator choose to further pursue the allegations relating to the email dated June 15, 2010 (*see* Dkt. No. 48, at 4), FURminator had one week to submit a proposal for the use of a forensic expert to investigate those allegations, and that PetVac had one week after service of the proposal to file any objections.  On July 28, 2010, PetVac provided the Court notice that the production of documents was duplicated and re-served on FURminator's counsel.  (Dkt. No. 55.)

On August 3, 2010, FURminator submitted a proposal to determine whether Mr. Rowald's computer contains evidence that Mr. Rowald created and sent the email on the purported date of June 15 and to determine whether the hard drive evidences the authenticity of

the email.  (Dkt. No. 56.)  On August 6, 2010, Mr. Rowald filed a notice of objection to the

forensic analysis.  (Dkt. No. 57.)  Four days later, Mr. Rowald filed a notice relating to the

proposed inspection of his computer. (Dkt. No. 58.)  In that notice, Mr. Rowald represented to

the Court that:

> Sometime between Friday, August 6, 2010, at about 7:30 p.m. and Monday,
> August 9, 2010, at approximately 8:30 a.m., the office of counsel for PetVac
> was subjected to a robbery.  Counsel left the office on Friday, August 6 just after filing
> the objections in this matter to attend a parade in Tomball that evening. He did not
> return to the office until Monday morning, whereupon he discovered the front
> door to his office locked, but standing open. A quick check of the office showed
> that several small electronic devices in the office were missing, most notably a
> clock radio and counsel's laptop, which had been taken from its docking station
> on his desk. This was immediately reported to the local police and an
> investigation is on-going.  However, as of the date of this notice, no leads have, to
> the best of counsel's knowledge, been discovered and the laptop remains missing.

FURminator then attempted to collect evidence concerning the alleged email and the theft

via a subpoena.  Specifically, FURminator filed a motion for contempt and to compel compliance in

the Southern District of Texas.  *See FURminator, Inc. v. PetVac Group LLC*, 4:10-mc-480, Dkt. No.

1 (S.D. Tex. Nov. 19, 2010) (hereafter, "*FURminator*, 4:10-mc-480").  In its motions, FURminator

moved the court to compel responses to a subpoena issued on Mr. Rowald and for an order finding

Mr. Rowald in contempt under Federal Rule of Civil Procedure 45(e).  The purpose of the subpoena

was to obtain evidence to determine whether Mr. Rowald could prove that he sent the particular

email to counsel for FURminator.  The subpoena was issued from the Southern District of Texas in

connection with the present case.  FURminator's motion was set for a hearing on December 21,

2010, and Mr. Rowald personally appeared at the hearing. (*FURminator*, 4:10-mc-480, Dkt. No. 12.)

Neither Mr. Rowald nor PetVac produced any documents in response to the subpoena (other than a

list of untimely objections) at the December 21, 2010 hearing.  Judge Kenneth M. Hoyt ordered Mr.

Rowald to produce multiple categories of documents to FURminator's counsel.  Judge Hoyt's order

also stated that:

> Mr. Rowald is ordered to appear and shall be required to comply with the production of the foregoing documents by personally bringing them to the courtroom of the Hon. Kenneth M. Hoyt, United States District Judge for the Southern District of Texas, at 9:00 a.m. on January 6, 2011**.** The documents shall be organized according to the aforementioned subsections in this Order to which they are responsive, and the production of these documents shall otherwise comply with the Federal Rules of Civil Procedure. Mr. Rowald shall provide a courtesy copy of these documents to both the Court and Plaintiff's counsel for review on January 6, 2011. Mr. Rowald shall remain in the courtroom on January 6, 2011 until released by the Court.
>
> IT IS FURTHER ORDERED that this Court awards all costs and attorney fees incurred with the filing and enforcement of the Plaintiff's Motion for Contempt and to Compel Compliance with a Subpoena filed November 19, 2010 (ECF No.1). Upon the conclusion of the hearing on January 6, 2011, the Court will consider an application for such costs and attorney fees.

On January 6, 2011, Judge Hoyt conducted a hearing to determine compliance with the subpoena.  The docket entry for the minutes states that "Mr. Rowald has not complied with the subpoena. Court orders that he be incarcerated until he is willing to sign authorization form presented by pltfs. Mr. Rowald signs the form to avoid incarceration but notes that he does so under objection." On December 29, 2010, Judge Hoyt also granted FURminator's Motion for Fees and Costs as Sanctions Against Kent Rowald, and ordered Mr. Rowald to pay the sum of $16,694.49. (*FURminator*, 4:10-mc-480, Dkt. No. 13.)  The December 29 Order also required Mr. Rowald to file a copy of the Order with the Clerk of this Court and deliver a courtesy copy to the chambers of the undersigned.

Although FURminator was unable to secure the requested documents from Mr. Rowald, FURminator was eventually able to secure the information it needed from Google, the host of Mr. Rowald's email account.  FURminator served a subpoena on Google, Inc. on January 12, 2011, and provided notice to counsel for PetVac.  This subpoena sought transmission logs, or logs tracking incoming and outgoing emails directed to Mr. Rowald's "krowald@patentlawyers .com" email address.   Transmission logs are important because they contain "header

6

information" (i.e., the "to," "from," "email routing information," and time/date stamp) for emails.  Google was able to locate the header information relating to June 15, 2010 between 5 p.m. Central and 7 p.m. Central, and produced this information to FURminator.  (*See* Dkt. No. 68-3.)  The header information (produced by FURminator in portable document format or "PDF" for purposes of filing) discloses a variety of emails sent to, and received from Mr. Rowald at his krowald@patentlawyers.com email address on June 15, 2010.  (Dkt. No. 68-8.)  None of the emails are directed to Jonathan Musch at Thompson Coburn LLP.

With this background, the Court held a hearing on FURminator's motion for sanctions and motion to strike on July 27, 2011. (*See* Dkt. No. 72.)  The notice for the hearing was sent to the parties via the electronic court filing system on June 2, 2011.  Neither Mr. Rowald nor a representative for PetVac attended the hearing or raised concerns with the scheduled time of the hearing.  At the hearing, FURminator contended that the evidence established that PetVac and its counsel misled this Court and that the alleged email was never sent as represented to the Court. Given the uncontested evidence, the Court agrees and finds that because of the knowing and willful nature of this misconduct, sanctions are appropriate.

## II.     Legal Standard

Federal Rule of Civil Procedure 37 authorizes sanctions for failure to comply with discovery orders.  This Court may bar the disobedient party from introducing evidence, or it may direct that certain facts shall be "taken to be established for purposes of the action . . . ."  Rule 37 also permits this Court to strike claims from the pleadings and even to "dismiss the action . . . or render a judgment by default against the disobedient party."  *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763 (1980).  "Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Id.* at 763-64 (citation omitted).

Rule 37(b)(2) requires that any sanction be just and that the sanction must be related to the particular claim which was at issue in the order to provide discovery. *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 413 (5th Cir. 2004) (citations omitted) (sanction was a finding of alter ego rooted in party's behavior regarding discovery related to the alter ego issue). Further, the penalized party's discovery violation must be willful. *United States v. $ 49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003).  Finally, a severe sanction under Rule 37 is only to be employed where a lesser sanction would not substantially achieve the desired deterrent effect. *Id.*

In addition to Rule 37, this Court also has inherent powers to enter sanctions.   The inherent powers of this Court are those which "are necessary to the exercise of all others." *Roadway Express,* 447 U.S. at 764 (citation omitted).   The contempt sanction is the most prominent inherent power, "which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court."  *Id.* (citation omitted).   The Fifth Circuit has recognized that the inherent power "is necessarily incident to the judicial power granted under Article III of the Constitution."  *Gonzalez v. Trinity Marine Group, Inc.,* 117 F.3d 894, 898 (5th Cir. 1997) (quoting *Woodson v. Surgitek, Inc*., 57 F.3d 1406 (5th Cir. 1995)).   When inherent powers are invoked, however, they must be exercised with "restraint and discretion."  *Id.*   Therefore, severe sanctions should be confined to instances of "bad faith or willful abuse of the judicial process."  *Id.*   In any event, when parties exploit the judicial process, a court may sanction conduct beyond the reach of other rules.  *Natural Gas Pipeline v. Energy Gathering, Inc.,* 2 F.3d 1397, 1407 (5th Cir. 1993).   That is, a district court is "free to fashion any sanction appropriate to punish recalcitrant parties and to deter those similarly situated." *Batson v. Neal Spelce Assoc., Inc.,* 765 F.2d 511, 516 (5th Cir. 1985).

### III.    Findings and Sanctions

In the light of the record in this case, the Court makes the following findings and determines that:

1.    PetVac[1] has willfully violated this Court's Orders, including its Discovery Order, on more than one occasion.  First, PetVac willfully violated this Court's October 22nd order when it failed to answer or otherwise respond to the complaint within thirty days.  Instead of following the Court's order, PetVac filed a second motion to extend. (Dkt. No. 9.)  The Court notes that PetVac had notice and knowledge of the October 22nd Order as evidenced by the filing of the motion to extend.  Importantly, at the time the motion was filed, PetVac had over 85 days to answer FURminator's Complaint.

2.    It was not until FURminator moved the Court to enter default judgment that PetVac finally obtained counsel and filed an answer on February 6, 2009.  This was 151 days after FURminator filed its complaint.  In addition, the motion was filed without leave of Court.  The Court ultimately allowed the answer even though it was filed in violation of the Court's October 22nd Order.  PetVac's counsel, Mr. Rowald, then failed to appear at the December 14, 2009 status conference.

3.    FURminator then filed a motion to strike on April 15, 2010 as a result violations of the Discovery Order.  The Court found that the violation of the Court's Discovery Order by PetVac was willful, and the Court provided appropriate sanctions at that time, including striking PetVac's invalidity contentions.  (*See* Dkt. No. 46.)  Those sanctions were apparently not enough to deter PetVac's conduct, as PetVac continued to willfully violate the Court's Discovery Order.  PetVac's continued willful violations of the Court's Discovery Order were brought to the Court's

---

[1]    In the Findings in this section, when the Court refers to "PetVac" and its conduct, it is referring to the company.  If the Court is referring to the conduct of its attorney, Mr. Rowald, it will specifically mention Mr. Rowald by name.

attention on June 18, 2010 by another motion by FURminator.  (Dkt. No. 48.)  PetVac's response (Dkt. No. 50) included the fraudulent email by Mr. Rowald.  Due to the investigation of the email, the Court is only now able to fully address PetVac's discovery violations presented by FURminator's motion to strike of June 18, 2010.  (Dkt. No. 48.)

4.     The Court's Order of July 28, 2010 (Dkt. No. 54) only partially addressed FURminator June 18, 2010 motion.  At that time, the Court did not have clear and convincing evidence to conclude that the June 15 email was fraudulent.  That is, if the email was not fraudulent, then PetVac's action with respect to discovery may have been more reasonable.  But the Court is now convinced that the email was fraudulent.  This is particularly evident from the information provided by Google that the email was never sent by Mr. Rowald.  Therefore, as to Mr. Rowald, this email has prompted the Court to take the proper steps to alert the Chief Judge of the Eastern District of Texas of the need to potentially take disciplinary measures.  The Court does not have sufficient evidence to determine whether or not PetVac knew about and/or supported Mr. Rowald's efforts to forge the email.  Nevertheless, because the Court now knows the email was fraudulent (unlike it did when it issued its July 28, 2010 Order), the Court can conclude that PetVac willfully violated the Court's Discovery Order.  As a result of this conduct, the Court is issuing sanctions against PetVac.

5.     To the extent PetVac might argue that the Court is sanctioning the company for actions of its counsel Mr. Rowald, PetVac would be misplaced.  First, PetVac's violations of this Court's Orders began before it had counsel, as evidenced above, by not complying with the Court's October 22nd Order.  Second, the Court is not sanctioning PetVac for the fraudulent email, rather, the fraudulent email merely proves that PetVac was not complying with the Court's Discovery Order, and the Court is sanctioning PetVac for this failure to comply with the

Court's Discovery Order for at least the second time.

6.      Therefore, the Court GRANTS FURminator's Second Motion to Strike (Dkt. No. 48) and FURminator's Renewed Motion to Strike and for Sanctions (Dkt. No. 68).  Accordingly, the Court strikes PetVac's answer and counterclaims; the Court hereby orders entry of default and judgment by default against Defendant PetVac; and the Court awards FURminator attorneys' fees and expenses relating to its effort of proving-up the fraudulent email.[2]

7.      The Court notes that these sanctions are severe, but lesser sanction against PetVac for similar conduct has not deterred PetVac from continuing to violate this Court's orders. Further, though the Court could sanction under its inherent power as described above, the sanctions above are imposed by virtue of the statutory authority vested in this Court by Federal Rule of Civil Procedure 37(b)(2)(A)(iii), 37(b)(2)(A)(v), 37(b)(2)(A)(vi), and 37(b)(2)(C).

## IV.     Conclusion

In conclusion, the Court GRANTS FURminator's Second Motion to Strike (Dkt. No. 48) and FURminator's Renewed Motion to Strike and for Sanctions (Dkt. No. 68).  It is hereby ORDERED that: (1) PetVac's answer and counterclaims are stricken; (2) default and judgment by default is entered against PetVac; and (3) FURminator is awarded attorneys' fees and expenses relating to its effort of proving-up the fraudulent email.  The Court shall hold a hearing on Tuesday, August 23, 2011, at 9:30 AM, which it will determine the appropriate amount of damages to be awarded to FURminator and whether a permanent injunction should issue against PetVac.

---

[2]      The Court's award includes only attorneys' fees and expenses that FURminator was not previously compensated for by Judge Hoyt's sanctions against Mr. Rowald.

It is so ORDERED.

SIGNED this  5th  day of August, 2011.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE